IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLORIA RUBIETTA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 7117 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, a foreign corporation d/b/a | ) | |
| AMTRAK, and BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria Rubietta has brought a four count third amended complaint against defendants National Railroad Passenger Corporation ("Amtrak") and BNSF Railway Company ('BNSF"), seeking damages for personal injuries she sustained while a passenger on an Amtrak train chartered by 20th Century Railroad Club, a railroad club that offers organized passenger rail trips to its members over tracks owned by BNSF. Although set out in four counts, the third amended complaint actually asserts five distinct claims against defendants. Count I is brought against Amtrak and alleges both negligence and spoliation of evidence. Count II alleges negligence against BNSF. Counts III and IV are res ipsa loquitur claims against Amtrak and BNSF respectively. Defendants have moved to dismiss the entire third amended complaint under Fed. R. Civ. P. 12(b)(6), arguing that the negligence claims in Counts I and II are preempted by federal law, that the spoliation claim in Count I is either preempted or fails to state a claim, and that Counts III and IV fail to state a claim. For the reasons described below, defendants' motion is granted in part and denied in part.

# FACTS[1]

In October 2007 20th Century chartered an Amtrak train for use by its club members and guests for a round trip passage between Chicago and Galena, Illinois. Plaintiff purchased a ticket from either 20th Century or Amtrak and was assigned a seat in a "handicapped" railcar that had a large open area and accessible restrooms. The open area was not equipped with handrails. Plaintiff was walking through the open area returning to her seat after using the restroom when the train accelerated and violently shook. Plaintiff was thrown against the wall, resulting in her injuries. The train was equipped with an on-board event recording system that was able to capture the speed of the train and other data, but defendants no longer have the device.

# DISCUSSION

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of such a motion is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. McMillan, 455 F.3d at 758. The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to relief and raise that possibility above the speculative level. Bell Atlantic Co. v. Twombly, 550 U.S. 554, 555 (2007).

---

[1] The facts are taken from plaintiff's third amended complaint and are accepted as true for purposes of the instant motion. McMillian v. Collection Prof's, Inc., 455 F.3d 754, 758 (7th Cir. 2006).

**Counts I and II**

Defendants have moved to dismiss Counts I and II, arguing that the negligence claims asserted in those counts are preempted by federal law. Specifically, defendants argue that: the claims alleging negligent operation of the train and negligent maintenance of the track are preempted by the Federal Railway Safety Act of 1970, 49 U.S.C. § 2101 et seq. ("FRSA"); and the claims alleging negligent railcar design are preempted by the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101 et seq. and/or the preemption provisions of the Amtrak Act, 49 U.S.C. § 24301(g).

State laws that interfere with or are contrary to the laws of Congress, enacted pursuant to the Constitution are invalid. U.S. Const. Art. VI, Cl. 2; Gibbons v. Ogden, 22 U.S. 1 (1824). Whether a federal statute preempts state law is a question of congressional intent. Shaw v. Dow Brands, Inc., 994 F.2d 364, 369 (7th Cir. 1993). That intent may be expressed in the statute itself, or may be implied by its structure or purpose. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). Not withstanding the supremacy of federal law, there is a presumption against preemption. See Cipollone v. Liggett Group, 505 U.S. 504, 518 (1992). This presumption requires courts to construe even express preemption clauses narrowly. Id.

As an initial matter, plaintiff argues that federal preemption is an affirmative defense that defendants have waived by not raising in response to her earlier complaints. Each new complaint supercedes all previous complaints, however, and an "amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1997). Thus, plaintiff is incorrect, and defendants have not waived the defense. Because preemption is an affirmative defense, however, plaintiff is correct

that she is not required to plead around it. See Fifth Third Bank v. CSX Corp., 415 F.3d 741, 745 (7th Cir. 2005). Nonetheless, the Seventh Circuit has held that where a defect is apparent on the face of the complaint (as defendants assert), an affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss. Butcher v. United Elec. Coal Co., 174 F.2d 1003, 1006 (7th Cir. 1949). Therefore, the court concludes that the defense has been properly raised.

The FRSA preemption provision (49 U.S.C. § 20106) provides that:

(2) a state may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation . . ., prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

(A) is necessary to eliminate or reduce an essentially local safety or security hazard;

(B) is not incompatible with a law, regulation or order of the United States government; and

(C) does not unreasonably burden interstate commerce.

In 2007, the FRSA was amended to clarify that nothing in the statute was to be construed to preempt an action under state law seeking damages for personal injury, death, or property damage alleging that the railroad: (a) failed to comply with the federal standard of care established by a regulation or order issued by the Secretary of Transportation covering the subject matter; (b) has failed to comply with its own rule or standard that it created pursuant to a regulation or order issued by the Secretary of Transportation; or (c) failed to comply with a state law, regulation or order that is not incompatible with the section. 49 U.S.C. § 20106(b)(1).

It is undisputed that the Secretary of Transportation, acting through the Federal Railroad Administration ("FRA"), has issued regulations codified at 49 C.F.R. § 213.9(c) that prescribe

the minimum operating speeds for train travel over a specified class of track, including the track at issue. Claims alleging that a train operated at excessive speeds are preempted when the train is operating within the speeds specified for the track classification in 49 C.F.R. § 212.9. See CSX Transp. Inc. v. Easterwood, 507 U.S. 658 (1993). This is true even if the speed exceeded the railroad's internal policy. See Hesling v. CSX Transp., Inc., 396 F.3d 632, 658 (5th Cir. 2005).

Plaintiff does not dispute that to state claim for negligence based on excessive speed she must allege that the train was traveling in excess of the speed restriction established by the federal regulations. Instead, she argues that she has so alleged. Paragraph 19 of the third amended complaint alleges that "the AMTRAK passenger train traveling on BNSF track was moving at an unreasonable speed and/or a speed that violated the speed restrictions of the Aurora subdivision between Galena and Aurora, Illinois." In paragraph 28, plaintiff alleges that Amtrak "operated the train in excess of the speed restrictions established by the rail owner and consistent with the class of track."

Neither of these two allegations specifically alleges that the train was traveling at a speed in excess of the federal regulation. As noted above, however, plaintiff does not have to plead around an affirmative defense, and the allegation that the train was traveling in excess of the speed restriction consistent with the class of track could be construed to allege a speed in excess of the federal regulation. In any event, because plaintiff agrees that she must prove that fact to prevail, even if the claims lack the necessary specificity, the court grants plaintiff leave to replead the allegations consistent with her admissions in her brief, and admonishes plaintiff to

5

plead sufficient facts, consistent with her obligations under Fed. R. Civ. P. 11, to support her claim that the speed of the train exceeded that allowed by federal regulation..

Next, defendant argues that the allegations relating to tack maintenance are preempted by the express provisions of the FRSA. Again, plaintiff acknowledges that the Secretary, through the FRA, has issued regulations and set standards governing track inspection and maintenance. 49 C.F.R. § 213. Again, plaintiff's brief attempts to clarify that she is alleging that defendants' maintenance and repair programs are inconsistent with federal law. Again, plaintiff's third amended complaint contains no such specific allegation and technically fails to state a claim. Accordingly, the court grants plaintiff leave to amend her complaint to so specifically allege.

Defendants next argue that plaintiff's claims that the railcar was negligently designed are preempted by the ADA or the Amtrak Act. Plaintiff alleges that she was walking through the large open area of the accessible railcar when she was injured. The ADA requires that each Amtrak train have "at least one passenger car per train that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in accordance with regulations issued under § 12164 of this Title . . .." 42 U.S.C. § 12162(a)(1).

The Department of Transportation ("DOT") has issued detailed regulations regarding the accessible railcars. 49 C.F.R. Part 37, subpart D. These regulations require sufficient spaces to park wheelchairs and spaces to fold and store wheelchairs. The regulations detailing requirements for Amtrak's intercity railcars require an unobstructed passageway at least 32 inches wide, 49 C.F.R. § 38.113(b), and spaces for persons who wish to remain in their wheelchairs or mobility aides with a minimum clear floor space 48 inches by 30 inches. 49 C.F.R. § 38.125(d)(2). The regulations further require handrails only "at entrances equipped

with steps." 49 C.F.R. § 38.115(c). With respect to the open accessible area, the regulations provide (49 C.F.R. § 38.115(a)):

> Where provided, handrails or stanchions within the passenger compartment shall be placed to permit sufficient turning and maneuvering space for wheelchairs and other mobility aides to reach a seating location.

Because, unlike the FRSA, the ADA does not contain an express preemption provision, defendants argue that plaintiff's negligent design claims are preempted under the doctrines of field and/or conflict Preemption. Even when there is no express provision for preemption, state law must yield to a congressional Act when Congress has intended federal law to "occupy the field." "And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000). Preemption will be found where it is impossible for a private party to comply with both state and federal law and where, under the circumstances of a particular case, the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Id.

In the instant case, neither field nor conflict preemption applies. Obviously, the ADA has not occupied the field of railcar safety for all passengers. Nor does it require or prohibit handrails in accessible cars. Indeed, it recognizes the potential need for and contemplates the inclusion of handrails, and requires only that where provided, the handrails must not interfere with wheelchair accessibility. 49 C.F.R. § 38.115(a). Nothing in the requirements of the ADA would prevent defendants from insuring the safety of all passengers who use the accessible cars. Thus, the claims of negligent design in Counts in I and II are not preempted by the ADA.

The Amtrak Act has an express preemption clause which provides that: "[a] State or other law related to rates, routes, or service does not apply to Amtrak in connection with rail passenger transportation." 49 U.S.C. § 24301(g). The term service "include[s] items such as ticketing, boarding procedures, provision of food and drink, baggage handling, in addition to the transportation itself . . .. Thus, intentional tort claims that expressly refer to ticketing and the transportation itself are claims that fall under the services umbrella" and are preempted. Jenkins v. National Railroad Passenger Corp., 2008 WL 68685, *12 (N.D. Ill. 2008) (citations omitted). Thus, plaintiff's claims alleging negligent seat assignment are preempted.

Finally, Count I alleges negligent spoliation of the event recorder data by Amtrak. A claim of negligent spoliation requires plaintiff to plead "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately caused by the breach, and damages." Cosgrove v. Commonwealth Edison Co., 734 N.E.2d 155, 161 (Ill. App. 2000). Plaintiff alleges that Amtrak had a duty to preserve the data under 49 C.F.R. § 229.135(e), which requires the railroad to preserve the recorder when the train is involved in an accident that must be reported to the FRA. This preservation requirement expires one year after the date of the accident unless the FRA or the National Transportation Safety Board has requested that the data be preserved longer. Because plaintiff has not alleged such a request she has not alleged that Amtrak has breached its duty of preservation under the Act. Any claim that Amtrak breached a common law duty of care to preserve evidence is preempted by 49 C.F.R. § 229.135(e). See Easterwood, 507 U.S. at 664. Accordingly, plaintiff's claim for spoliation of evidence is dismissed.

**Counts III and IV**

Counts III and IV simply re-allege the negligence claims alleged in Counts I and II and then allege that plaintiff would not have been thrown across the railcar in the absence of negligence. The counts thus assert <u>res ipsa loquitur</u> claims against defendants. Although <u>res ipsa loquitur</u> is a principle of evidence and not a cause of action, there is nothing improper about pleading one's intent to rely on it. <u>Bielskis v. Louisville Ladders, Inc.</u>, 2007 WL 2088583, * 2 (N.D. Ill. 2007). Indeed, Illinois requires a plaintiff to plead and prove the elements of <u>res ipsa loquitur</u>. <u>Heastie v. Robert</u>, 226 Ill.2d 515, 532 (2007). Accordingly, Counts III and IV state claims to the extent that they re-allege negligence claims in Counts I and II that are not preempted.

<u>**CONCLUSION**</u>

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part. Plaintiff is directed to file a fourth and final amended complaint consistent with this opinion on or before February 14, 2012. Defendants are directed to answer the fourth amended complaint on or before March 6, 2012. This matter is set for a report on status on March 13, 2012, at 9:00 a.m.

**ENTER:** January 30, 2012

_____
**Robert W. Gettleman
United States District Judge**